1

2  Lenore L. Albert, Esq.   SBN 210876
   LAW OFFICES OF LENORE ALBERT
3  7755 Center Avenue, Suite #1100
   Huntington Beach, CA 92647
4
   Telephone (714) 372-2264
5  Facsimile (419) 831-3376
   Email: lenorealbert@msn.com
6

7  Attorney for Plaintiff, Jason Hartman
8

9
                    UNITED STATES DISTRICT COURT
10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  JASON HARTMAN, an individual,          CASE NO.

13         Plaintiffs,

14  vs.                                     **COMPLAINT**

15  DON FULLMAN, an individual; PIP          1.  Breach of Settlement Agreement
    EAST, LLC d/b/a the PIP GROUP f/k/a
16  PIP WEST, LLC, a business entity form    2.  Fraud/Deceit
    unknown; LENA SELLS, an individual;
17                                           3.  False Promise
    CHARLES SELLS, an individual; and
18  DOES 1-50, inclusive,                    4.  Conversion

19                                           5.  Breach of Fiduciary Duty
           Defendants.
20                                           6.  UCL 17200 Violation

21                                           7.  UCL 17500 Violation

22                                           8.  RICO

23                                              [Jury Demanded]

24

25

26       1.   This is a breach of Settlement Agreement in Georgia state Case no.

27  2014CV255485 (related 2017CV294502)  and an "Investor Stacking" Ponzi scheme case

28  wherein real estate investors, Plaintiff, Jason Hartman and those similarly situated

(hereinafter referred to as "Plaintiffs" or "Plaintiff") allege eight (8) causes of action against Defendants, PIP East, LLC d/b/a the PIP Group f/k/a PIP West, LLC, Lena Sells, Charles Sells and Does 1 through 50, inclusive (collectively referred to as "Defendant" or "Defendants").

2. This court has jurisdiction based on federal question pursuant to 28 U.S.C. § 1331 and RICO statutory scheme (18 U.S.C. § 1961 et seq); it also has jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332 because the Plaintiff is a citizen of California, the Defendants are a citizen of a different state, and the amount in controversy exceeds $75,000.00.

**The Parties**

3. Plaintiff Jason Hartman is an individual residing in Nevada who signed the Settlement Agreement with Defendant PIP East, LLC on or about March 2, 2017. He invested in approximately 207 different tax liens from Defendant while he was residing in California. (See, Exhibit 1)

4. Defendant Donald Fullman is an individual residing in Orange County, California. He was a manager, sponsor, co-owner, executive, and/or officer of PIP West, LLC who signed the original contract on behalf of PIP West, LLC when the underlying investment contract with Plaintiff was entered into in California in 2006.

5. Defendant PIP East, LLC d/b/a the PIP Group and f/k/a PIP West, LLC (hereinafter "PIP" or "PIP East, LLC") is a business organization, that represents it is now in the state of South Carolina and does business in California. It has over 700 tax lien investors it services according to its website: www.PIPGroup.com. PIP East, LLC entered into a Settlement Agreement with Plaintiffs in this action on or about March 2, 2017.

6. PIP West, LLC was the business organization located in Orange County, California that Plaintiffs entered into the original agreement for the tax lien investments. PIP West, LLC merged into PIP East, LLC on or about January 1, 2016. (See, Exhibit 2)

7.    Defendant Lena Sells is allegedly a resident of South Carolina at all times mentioned in this Complaint. Plaintiff is informed and believes and alleges thereon that Lena Sells, at all times mentioned in this Complaint, was an executive officer of PIP East, LLC and had the authority to legally bind the corporation.

8.    Defendant Charles Sells is currently a resident of South Carolina. Plaintiff is informed and believes and alleges thereon that Charles Sells was the Executive Manager of PIP East, LLC and PIP West, LLC and had the authority to legally bind the corporation. Plaintiff is informed and believes and alleges thereon that Charles Sells was operating PIP-West, LLC out of Laguna Niguel, California and acts of mail fraud were generated from this location.

9.    Catherine A. Trogg is a third party employed by Charles Sells, PIP West, LLC, PIP East, LLC and the PIP Group at all times mentioned in this complaint. Plaintiff is informed and believes and alleges thereon that Ms. Trogg was acting in the course and scope of her employment with Defendants at all times mentioned herein and the Defendants, and each of them, instructed, directed or requested Ms. Trogg to so act or fail to act; or the Defendants and each of them, consented, permitted, knew, acquiesced in, adopted, acted in concert, aided and abetted, or acquiesced and ratified in Ms. Trogg's conduct. Ms. Trogg was a registered Notary Public in S. Carolina from 2015 through the present.

10.    Platinum Properties Investor Network, Inc. (hereinafter "PPIN") is a business organization located in Orange County, California that was also sued by PIP East, LLC and entered into a Settlement Agreement with Defendant PIP East, LLC on or about March 2, 2017. Plaintiff is the sole shareholder.

11.    The true names of Defendants sued as Does are unknown to Plaintiff.

a.    Doe Defendants 1 through 10 were the alter ego, representatives, agents and/or employees of other named Defendants and acted within the scope of that agency of employment.

3
**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

b.  Doe Defendants 11 through 50 are persons whose capacities are unknown to Plaintiff.

12.   At all times herein mentioned, Defendants, and each of them, were an owner, a co-owner, an agent, representative, partner, and/or alter ego of its co-Defendants, or otherwise acting on behalf of each and every remaining Defendant and, in doing the things hereinafter alleged, were acting within the course and scope of their authority as an owner, a co-owner, agent, representative, partner, and/or alter ego of its co-Defendants, with the full knowledge, permission and consent of each and every remaining Defendant, each co-Defendant having ratified the acts of the other co-Defendants

13.  Plaintiff is informed and believes and, upon such information and belief, alleges that each of the Defendants named herein as Does 1 through 50, inclusive, were and are in some manner responsible for the actions, acts and omissions herein alleged, and for the damage caused by the Defendants, and are, therefore, jointly and severally liable for the damages caused to Plaintiff.

14.  Plaintiff is informed and believes and, upon such information and belief, alleges that each of the Defendants including Does 1 through 50, inclusive, were, at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

15.   Wherever appearing in this Complaint, each and every reference to Defendants or to any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them, named and unnamed, including all fictitiously named Defendants, unless said reference is otherwise specifically qualified.

16.  Plaintiff alleges that Defendants Charles Sells, Lena Sells and Does 1 through 10 were members, subscribers of shares, shareholders or promoters of Defendant PIP East, LLC. There exists at all times mentioned herein a unity of interest between Defendants Charles Sells, Lena Sells, Does 1 through 10, and Corporate Defendant PIP

East, LLC such that any individuality and separateness between Defendants Charles Sells, Lena Sells and Does 1 through 10, as shareholders and PIP East, LLC as the Corporate Defendant have ceased and Corporate Defendant PIP East, LLC is the alter ego of Defendant Charles Sells, Lena Sells and Does 1 through 10 as follows:

    a.    Plaintiff is informed and believes and alleges thereon that PIP East, LLC was a mere shell and sham without adequate capital assets, used by Charles Sells, Lena Sells and Does 1 through 10 as a device to avoid individual liability and for the purpose of substituting an insolvent corporation in the place of Defendants Charles Sells, Lena Sells and Does 1 through 10.

    b.    Corporate Defendant, PIP East, LLC is and was at all times mentioned herein, so inadequately capitalized that, in comparison to the business to be done by Corporate Defendant PIP East, LLC and the risks of loss attendant thereto, its capitalization was illusory or trifling.

    c.    Defendants Lena Sells and Charles Sells used Corporate Defendant PIP East, LLC's assets for their own personal use, caused assets of Corporate Defendant PIP East, LLC to be transferred to them without adequate consideration and withdrew funds from the Corporate Defendant's bank accounts for their personal use, leaving insufficient funds in the account to pay corporate debts, including but not limited to those debts with checks already drawn.

    d.    Lena Sells and Charles Sells failed to follow corporate formalities in that the activities and the business of Corporate Defendant PIP East, LLC were carried out without the holding of shareholder meetings or approval of the board of directors.

    e.    Plaintiff alleges that adherence to the fiction of the separate existence of Corporate Defendant PIP East, LLC as an entity distinct from shareholder

Defendants Charles Sells, Lena Sells and Does 1 through 10 would permit abuse of the corporate privilege and would sanction fraud in that Defendants have withdrawn funds from the Corporate Defendant PIP East, LLC and distributed said funds without any consideration to Corporate Defendant PIP East, LLC all for the purpose of avoiding and preventing attachment and execution by creditors, including Plaintiff, thereby rendering Corporate Defendant PIP East, LLC insolvent and unable to pay its obligations.

f.      As a result of the acts and omissions complained of herein, Defendants Don Fullman, Lena Sells, Charles Sells and Does 1 through 10 are jointly and severally liable for all relief sought herein against Corporate Defendant PIP East, LLC by Plaintiff.

## Background Facts

17. PIP is a promoter of service industry programs promising to purchase and manage tax lien investments for investors. Charles Sells represented they were experts in tax lien investments and would fully manage all parts of the investment.

18. By way of background, in or about September 5, 2006, Defendant Don Fullman on behalf of PIP West, LLC entered into a written contract in California with Plaintiff representing PIP West, LLC would find, sell and manage quality tax lien investments to and for Plaintiff. (Exhibit 2)

19. Plaintiff signed a written agreement with PIP West, LLC and gave PIP West, LLC approximately $15,000.00 to initially invest on or about September 5, 2006.

20. PIP West, LLC represented it would act as Plaintiff's agent and would perform all "research," do the "bidding," "select[] and acquire" the tax liens and make sure the liens were "recorded in the name of Principal" for a monthly management fee Plaintiff paid to PIP West, LLC.

21. By December 31, 2009 Plaintiff had invested approximately $169,560.24 with PIP West, LLC wherein he was required to obtain cashier's checks from the bank and

mail them from California to Defendant's agents in Illinois. PIP West, LLC represented that it had purchased 207 tax liens for Plaintiff of which 130 had been redeemed.

22. Defendant Don Fullman and/or Charles Sells selected ten (10) real estate investment tax liens and advised Plaintiff to foreclose on them in 2010. Defendant charged Plaintiff an additional $17,000.00 to do so, with $7,000.00 paid to PIP West, LLC and $10,000.00 to James & Associates Law Office.

23. Relying on Don Fullman and Charles Sells' expertise and advice as his agent, on or about June 28, 2010 Plaintiff paid $7,000.00 to PIP West, LLC and mailed a $10,000.00 check to James & Associates Law Office after executing the agreement to foreclose on the ten (10) properties secured by the real estate investment liens that Charles Sells and PIP West, LLC represent it purchased with Plaintiff's investment more particularly described as:

| | | | |
|---|---|---|---|
| a. | 14-16-209-004 | 2006-00131 | Ogle*; |
| b. | 18-07-382-013 | 200601626 | Peoria; |
| c. | 18-07-478-008 | 200601646 | Peoria; |
| d. | 18-07-479-009 | 200601648 | Peoria; |
| e. | 18-18-181-001 | 200601924 | Peoria; |
| f. | 18-18-408-006 | 200602077 | Peoria; |
| g. | 14-23.0-303-017 | Book127Page372Line3 | Sangamon; |
| h. | 14-26.0-131-030 | Book127Page381Line3 | Sangamon*; |
| i. | 23-07-202-007-0040 | 60436 | Vermillion; and |
| j. | 23-10-306-004-0040 | 60457 | Vermillion.[1] |

(See, Exhibit 3)

---

[1] Parcel Identification Number, Tax Certificate Lien Number, and County (* indicates that the property was redeemed).

**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

24. PIP West, LLC, Don Fullman and Charles Sells represented to Plaintiff that the properties went into foreclosure. Thereafter no one from PIP West, LLC would communicate with Plaintiff when he asked for a status update.

25. When Plaintiff started to complain about PIP West, LLC and Charles Sells, PIP West, LLC sued Plaintiff and Platinum Properties Investor Network, Inc. ("PPIN") on December 31, 2014 in state court in Georgia ("PIP I" 2014CV255485) although no party was a resident of Georgia and the contract was signed at PIP West, LLC in Orange County, California. (See Exhibit 2 for original contract)

26. During the PIP I lawsuit, PIP West, LLC merged with PIP East, LLC on January 1, 2016 and PIP East, LLC was substituted in the place of PIP West, LLC as the Plaintiff in the Georgia lawsuit.

27. The parties entered into a Settlement Agreement on March 2, 2017 and dismissed the action.

28. On March 2, 2017 PIP East, LLC represented in writing it would delete certain statements it posted about Plaintiff on the internet and that it would title the real estate tax liens and/or property back in Plaintiff's name. A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1 and its material terms are incorporated herein.

29. PIP East, LLC, Lena Sells, Charles Sells and Defendant Does 1 through 50 have breached the Settlement Agreement.

30. Plaintiff demanded performance but Defendants, and each of them, have refused and failed to perform so Plaintiff has sued.

## The Ponzi Scheme

31. Plaintiffs are informed and believe and allege thereon that Defendants were investor stacking to increase profits. Investor stacking is the process of signing up customers to join an investment scheme for a modest management fee while representing that as an agent, the management company (PIP) would handle everything from selecting

**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

and purchasing the tax liens to purchase and put in the investor's portfolio to filing all proper paperwork if the investor chose to foreclose on the lien after the redemption in the instance that a tax lien is not redeemed. In order for this process to work properly, an investor would have to determine on an annual basis whether or not to pay the taxes for the following year. If the tax investor did not pay the taxes for the following year, then another tax lien would be auctioned off and another investor could purchase that tax lien thereby automatically increasing the risk to the prior investor of a loss in investment value. This material risk in tax lien investments was never fully and fairly disclosed to the investors of PIP and as such, it resulted in allowing PIP to stack investors on the same property during the redemption period of the prior investor. Although normally the stacking would mean two (2) investors on one property giving PIP double profits for management, in theory PIP could obtain up to 3 different investors on a single property due to an extension and with an additional extension it could go up to 4 investors. Plaintiff is informed and believes and alleges thereon this gave incentive to PIP to allow the tax liens to expire instead of having the proper paperwork filed in order to foreclose and obtain a tax deed on stacked investments. This also allowed PIP to foreclose and take properties in its own name on the tax deed which it could then flip, cutting out the investor. This also gave PIP no incentive to actually "research" and "investigate" the quality of the tax lien before bidding on it at auction.  Investigation and discovery is continuing but scenarios like these can be seen taking place in the ten (10) tax liens mentioned herein.  Properties with tax lien auctions are finite in number. Instead of creating a business model taking into account the true cost of purchasing and properly managing tax liens for an investor, PIP took a shortcut to profits by investor stacking and then making online information advertising to obfuscate its true business model. By targeting the real estate investors like Plaintiffs that are accustomed to thinking of one property and lien position in time property recording rules, it was an easy Ponzi scheme

to conceal. Plaintiffs are still investigating and discovering the extent of this Ponzi scheme and reserve the right to amend as more facts become available.

32.  Additionally, Plaintiff is informed and believes and alleges thereon that Defendants did not immediately assign the tax liens to the investors so that the investors could have full control as advertised by Defendants.

33.  All causes of action or claims therein are pled in the alternative to the extent the facts are inconsistent as to whether or not any of the tax liens or tax deeds actually existed during any material time mentioned throughout this complaint on the grounds discovery and investigation is still ongoing.

34.  All allegations of facts within the knowledge of the Defendants are pled on information and belief and this phrase is incorporated in each cause of action below.

## Causes of Action

### FIRST CAUSE OF ACTION
#### (Breach of Contract)
**(Jason Hartman against Defendants PIP East, LLC, Lena Sells, Charles Sells, and Does 1-50)**

35.  Plaintiff incorporates the allegations in paragraphs 1 through 34 above as though they are fully set forth herein.

36.  On March 2, 2017 Defendants Lena Sells and/or Charles Sells executed a written Settlement Agreement on behalf of Defendant PIP East, LLC who voluntarily and intentionally stepped into the shoes of PIP West, LLC to act on its behalf.

37.  There were two material terms contained in the Settlement Agreement: (1) PIP would take down defamatory content about Plaintiff on the internet; and (2) PIP would give all tax liens that were not redeemed back to Plaintiff. A true and correct copy of the contract is attached hereto as *Exhibit 1*. The terms of the contract are incorporated herein by this reference.

38. Defendants, and each of them promised to "execute and deliver all such documents and do all such other acts and things as may be necessary to fully effectuate this Agreement and the matters contemplated thereby."

39. Within four years of the filing of this action, Defendants breached the contract by failing to uphold the covenants regarding timely performance of:

    a.    Taking down "The Truth About Jason Hartman" posting on PIP West Twitter and PIP West Google Plus account dated June 2, 2015;

    b.    Returning all tax liens/tax deeds that were not redeemed to Plaintiff;

40. Plaintiffs have performed as required pursuant to the contract and law to entitle them to bring this action.

41. Plaintiffs have made demand on Defendants for performance, but Defendants have refused to perform. Plaintiff has been damaged by Defendants' breach and failure to perform. Plaintiff is informed and believes and alleges thereon that the failure to perform has resulted in approximately $130,000.00 in damages plus costs and attorney fees.

**SECOND CAUSE OF ACTION**
**(Fraud/Deceit)**
**(Jason Hartman against Defendants PIP East, LLC, Lena Sells, Charles Sells and Does 1-50)**

42. Plaintiff incorporates the allegations in paragraphs 1 through 41 above and the exemplary damages section below, as though they are fully set forth herein.

43. From on or about September 5, 2006 through June 28, 2010 Plaintiffs purchased 207 real estate tax lien investments from Defendant PIP West, LLC, ten (10) of which Plaintiff authorized foreclosure of on June 28, 2010 as more particularly described in paragraph 18 of this complaint.

44. Plaintiffs were not experts in real estate tax lien investments and the properties that PIP West, LLC selected for Plaintiffs were located in states like Illinois, a state Plaintiffs did not reside.

45. When Plaintiffs invested approximately $169,560.24 as of 12/31/09 with Defendants, Defendant Charles Sells represented, as an agent of PIP West, LLC, that PIP Group which included PIP West, LLC and PIP East, LLC were experts with tax lien investments and would manage all aspects of the tax liens including any potential foreclosure action for an additional $17,000.00 for ten properties.

46. Plaintiffs paid PIP West, LLC and its designated attorneys $17,000.00 to manage the foreclosures on ten of the investment properties.

47. This later led to litigation which Defendants filed in Georgia and resulted in the Settlement Agreement between the parties on March 2, 2017 which is the subject matter of the dispute at issue in this case.

48. As part of the Settlement Agreement, Defendants Lena Sells and/or Charles Sells[2] on behalf of PIP East, LLC represented that Defendants would "execute and deliver all such documents and do all such other acts and things as may be necessary to fully effectuate this Agreement and the matters contemplated thereby." When PIP East, LLC and the signer which was either Charles Sells or Lena Sells, made those representations, those representations were made on behalf of PIP East, LLC, PIP West, LLC, Charles Sells and Lena Sells, and Does 1 through 50. The terms of the Settlement Agreement are incorporated herein by this reference. (Exhibit 1)

49. The two representations were basically that (1) Defendants would delete all references to internet postings it made about Plaintiff; and (2) it would return all tax liens/tax deeds that were not redeemed back to Plaintiffs. It was implied that the tax liens/deeds still existed and had some value.

50. Lena Sells and/or Charles Sells' representations were false.

51. Lena Sells and/or Charles Sells knew that the representation made on March 2, 2017 was false when they made it, or that they made the representation recklessly and

---

[2] The signature for PIP East, LLC on the Settlement Agreement is not legible.

**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

without regard for its truth. Plaintiffs are informed and believe and allege thereon that Defendants knew they were not going give back all tax liens/tax deeds Plaintiff purchased that were not redeemed when they executed the document, or they concealed the material fact that Defendants were no longer in possession of such tax liens/tax deeds or that what they had been holding onto were no longer worth anything of value when they executed the agreement. Furthermore, Plaintiffs are informed and believe and allege thereon that Defendants knew they were not going to delete the reference to one of the writings on its Google Plus and Twitter account when they executed the agreement or concealed the fact that references to the "The Truth About Jason Hartman" would still remain on the Google Plus and Twitter account even when they deleted the underlying PDF because it was merely a link added to a photo of Plaintiff that they uploaded separately. This is damaging because Defendants still have a defamatory report on Rip-Off Report about Plaintiff.

52. Since, these were the only two material provisions to the Settlement Agreement, the promises made by Defendants were illusory.

53. Lena Sells and/or Charles Sells made the representations on March 2, 2017 with the intent that Plaintiff rely on the representations to induce him to waive any and all legal rights under the original contract and to their counterclaims and dismiss them.

54. In reliance on Defendants' representations made on March 2, 2017, Plaintiffs agreed to reduce what was owed by approximately $130,000.00; signed the Settlement Agreement; waived their legal rights under the original contract plus their right to a jury trial; and dismissed their counterclaim for breach of contract after Plaintiff spent considerable time and resources on accumulating evidence to support the breach of contract claim and prosecute it to Plaintiffs' damage. Mr. Hartman signed the Settlement Agreement instead of continuing to pursue his breach of contract claim.

55. Plaintiffs believed that by waiving damages and obtaining removal of the defamation from the internet along with obtaining custody of the investment properties

and/or tax liens had resolved any problems Plaintiff had with Defendants before entering into the Settlement Agreement.

56. Defendants PIP East, LLC, Lena Sells and Charles Sells obtained money, property or services through the misrepresentations and/or concealment of material facts made on March 2, 2017.

57. Plaintiff's reliance was reasonable because the representations were reduced to a writing and signed by Charles Sells and/or Lena Sells, officers of Defendant PIP East, LLC which was intentionally substituted into the Georgia action by said Defendants for PIP West, LLC who entered into the original contract with Plaintiffs.

58. As a direct and proximate result, Plaintiff spent considerable time and money trying to gather evidence to pursue a counterclaim in a remote court in Georgia in order to recoup some of the losses Plaintiff faced by doing business with Defendants and attempting to obtain some of the payments owed by Defendants; and Plaintiff also gave up certain legal rights by signing the Settlement Agreement in addition to the loss of $130,000.00 or the ten (10) properties secured with the tax liens he purchased.

59. Plaintiff's reliance on Lena Sells, Charles Sells and PIP East, LLC's oral and written representations made on March 2, 2017 as laid out above was a substantial factor in causing Plaintiff's harm.

60.   The aforementioned conduct of PIP East, LLC was malicious and/or intentional misrepresentation, deceit, or concealment of a material fact known to PIP East, LLC with the intention on the part of the PIP East, LLC, PIP West, LLC, Charles Sells, and Lena Sells of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### THIRD CAUSE OF ACTION
### (False Promise)

14
**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

**(Jason Hartman against Defendant PIP East, LLC, Lena Sells, Charles Sells and Does 1-50)**

61.  Plaintiff incorporates the allegations in paragraphs 1 through 60 above and the exemplary damages section below, as though they are fully set forth herein.

62.  PIP East, LLC, Lena Sells and Charles Sells made a promise to Plaintiff to wit:

   a.  On March 2, 2017 Defendants Lena Sells and/or Charles Sells on behalf of PIP East, LLC represented in writing they would (1) delete all references to internet postings it made about Plaintiff and (2) return all tax liens/tax deeds Plaintiff invested in that had not been redeemed back to Plaintiff. The written promises are attached as Exhibit 1.

   b.  On February 28, 2017 Defendants attorney on behalf of defendants represented in an email that if "he [Jason] wants to dismiss it [the lawsuit] without prejudice he could always decide to re-file at a later date."

63.  PIP East, LLC, Lena Sells and Charles Sells did not intend to perform the promise when Defendants made it on March 2, 2017 because the Defendants, and each of them, knew Lena Sells and Charles Sells did not have all of the tax liens and/or deeds to title back to Plaintiff and their reference to the defamatory file/link was separate. (See, Exhibit 5) For example, Defendants had taken title to one of the tax deeds and sold it to a third party. At the very least, the promise was illusory and without valuable consideration. Plaintiff also was barred from re-filing his claim at a later date.

64.  PIP East, LLC intended that Plaintiff rely on this promise it placed in the Settlement Agreement on March 2, 2017.

65.  Plaintiff reasonably relied on PIP East, LLC's promise because the Defendant put the promises in writing.

66.  As a result of Plaintiff's reliance, Plaintiffs dismissed their counterclaim against Defendants in Georgia state court and inserted "without prejudice" in the Agreement with the understanding it meant he was not later barred from re-filing.

15
**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

67.   PIP East, LLC, Charles Sells and Lena Sells did not perform the promised acts or such performance was illusory; and as such failed to contain any "valuable consideration."

68.   Plaintiff was harmed because Plaintiff lost approximately $130,000.00 to $350,000.00 in equity discounted in the Settlement Agreement that was owed under the original contract.  Plaintiff also lost the time and his legal rights.

69.   Plaintiff's reliance on PIP East, LLC's promises were a substantial factor in causing its harm.

70.   The aforementioned conduct of PIP East, LLC was malicious and/or an intentional misrepresentation, deceit, or concealment of a material fact known to PIP East, LLC with the intention on the part of the PIP East, LLC, Charles Sells, and Lena Sells of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

### FOURTH CAUSE OF ACTION
### (Conversion)
### (Plaintiff Jason Hartman against Defendant PIP East, LLC, Lena Sells, Charles Sells and Does 1-50)

71. Plaintiff incorporates the allegations in paragraphs 1 through 68 above and the exemplary damages section below, as though they are fully set forth herein.

72.   Plaintiff is informed and believes and alleges thereon that Defendants PIP West, LLC, PIP East, LLC dba the PIP Group, Lena Sells, Charles Sells and DOES 1 through 50 had possession and control of seventy-seven (77) tax liens and/or tax deeds from 2006 through March 2, 2017.

73.   PIP East, LLC, PIP West, LLC, the PIP Group, Lena Sells, Charles Sells, and DOES 1 through 50 wrongfully exercised dominion and control over Plaintiff's said

personal property and did not return the remaining sixty-seven (67) tax liens and/or title until March 2, 2017; and never returned approximately ten (10) other liens.

74.   Plaintiff owned/possessed and/or had a right to possess the personal property that was converted from 2007 through March 2, 2017.

75.   PIP East, LLC, PIP West, LLC, the PIP Group, Lena Sells and Charles Sells intentionally and substantially interfered with Plaintiff's property by refusing to return the personal property (tax liens/title to properties) after Plaintiff demanded its return. Plaintiff is informed and believes and alleges thereon that Defendants sold at least one tax deed to a third party and Defendants kept all revenue made thereon.

76.   Plaintiff did not consent.

77.   As a direct and proximate result of Lena Sells, Charles Sells, PIP West, LLC and PIP East, LLC's dba the PIP Group conduct and each of them, Plaintiff was harmed because he was deprived of his personal property that PIP East, LLC, Charles Sells, Lena Sells and DOES 1 through 50 were not entitled to for over a decade.

78.   PIP East, LLC dba PIP Group, PIP West, LLC, Lena Sells, Charles Sells and DOES 1 through 50 were a substantial factor in causing Plaintiff's harm.

79.   The aforementioned conduct of PIP East, LLC was malicious and/or an intentional misrepresentation, deceit, or concealment of a material fact known to PIP East, LLC with the intention on the part of the PIP East, LLC, Charles Sells, and Lena Sells of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

**FIFTH CAUSE OF ACTION**
**(Breach of Fiduciary Duty)**
**(Plaintiff Jason Hartman against Defendant Don Fullman, PIP East, LLC, Charles Sells, Lena Sells and Does 1-50)**

17
**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

80. Plaintiff incorporates the allegations in paragraphs 1 through 79 above and the exemplary damages section below, as though they are fully set forth herein.

81. Plaintiff is informed and believes and alleges thereon that Don Fullman, Charles Sells and Defendant PIP East, LLC as successor of interest by way of merger of PIP West, LLC owed Plaintiffs a fiduciary duty as Plaintiffs' agent under the original contract dated September 5, 2006. (Exhibit 2)

82. Alternatively, or additionally to paragraph 81 above, Defendants PIP East, LLC, Charles Sells and Lena Sells owed Plaintiff a fiduciary duty because one was created in the Settlement Agreement dated March 2, 2017 which is attached as Exhibit 1.

83. Defendant Don Fullman gained Plaintiff's trust and they met frequently at Don Fullman's office in Orange County concerning Plaintiff's investments.

84. Defendants acted on Plaintiff's behalf in researching, selecting, acquiring, managing and recording the tax liens or title to the properties in the name of Plaintiff who had invested approximately $169,560.24 with Defendants PIP West, LLC by December 31, 2009. Defendants also acted on Plaintiffs' behalf in deleting the promised material from the internet and titling back the tax liens and/or property to Plaintiff.

85. PIP East, LLC breached its fiduciary duty because it failed to act in the same manner as a reasonably careful agent and/or party would have acted under the same or similar circumstances after entering into Settlement Agreement with one of its investors.

86. Don Fullman, Charles Sells and Lena Sells breached their fiduciary duty because they failed to act in the same manner as a reasonably careful agent and/or party would have acted under the same or similar circumstances to the Settlement Agreement would have acted.

87. Plaintiff is informed and believes and alleges thereon that Defendants Don Fullman, PIP East, LLC, Lena Sells, and Charles Sells breach included but was not limited to self-dealing (e.g. skimming off of the investments and revenue from the sale of the tax liens and foreclosures); failed to disclose accurate accountings to Plaintiff; and

failed to title over properties or disclose it did not have the property to title over when it executed the Settlement Agreement (breaching a duty of loyalty).

88. As a result, Plaintiff's revenue stream was cut off. Defendants PIP East, LLC f/k/a PIP West, LLC and dba the PIP Group, Don Fullman, Lena Sells and Charles Sells' conduct was a substantial factor in causing that harm.

**SIXTH CAUSE OF ACTION**
**(Unfair Competition Violation of Cal Bus & Prof Code §17200)**
**(Plaintiff Jason Hartman against Defendant Don Fullman, PIP East, LLC, Charles Sells, Lena Sells and Does 1-50)**

89. Plaintiff incorporates the allegations in paragraphs 1 through 88 above and the exemplary damages section below, as though they are fully set forth herein.

90.     California's Unfair Competition Law (UCL) defines unfair competition to include any "unlawful, unfair, or fraudulent" business act or practice. California *Business & Professions Code §17200, et seq.*

91.     By its terms, the statute is broad in scope.  "It governs 'anti-competitive business practices' as well as injuries to consumers; and has as a major purpose "the preservation of fair business competition."  [Citations.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)  "By defining unfair competition to include any '*unlawful* . . . business act or practice' [citation], the UCL permits violations of other laws to be treated as unfair competition that is independently actionable.  [Citation.]" (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.)  In addition, under the UCL, "'a practice may be deemed unfair even if not specifically proscribed by some other law.' [Citation.]" (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143.)  The remedies available under the UCL are "cumulative . . . to the remedies or penalties available under all other laws of this state." (*Business & Professions Code*, § 17205.)  *Arce v Kaiser Foundations Health Plan, Inc.* (2010)

19
**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

92.    Defendants have violated Cal *Business & Professions Code* §17200, et seq., with the conduct as alleged above.

93.    Each Defendant knew or had reason to know of these facts, and as such are jointly and severally liable.

94.    Beginning at an exact date unknown to Plaintiffs but at least in the past 4 years, (in the case of Plaintiff since September 5, 2006) PIP East, LLC f/k/a PIP West, LLC also d/b/a PIP Group, Don Fullman, Charles Sells, Lena Sells and Does 1 through 50 have committed acts of unfair competition, as defined by Business & Professions Code §17200, by engaging in the following practices:

a.    Defendants PIP East, LLC f/k/a PIP West, LLC also d/b/a PIP Group, Don Fullman, Charles Sells, Lena Sells and Does 1 through 50 had a policy/practice of purchasing tax liens with prior history of sales in error in Illinois for its principal investors in violation of its fiduciary duty to research and select quality tax liens. The purchase/sale of the tax liens were made with the intent to defraud investors through a Ponzi scheme it created in violation of Cal Penal Code 532 (theft), 18 U.S.C. 1341, 18 U.S.C. 1343 and consequently, constitutes an unlawful business act or practice *within* the meaning of Business & Professions Code §17200.

i.    According to Illinois law, a purchaser is reimbursed the price they paid when there is a sale in error under Section 21-315 which states: Sec. 21-315. Refund of costs; interest on refund.

    (a) If a sale in error under Section 21-310, 22-35, or 22-50 is declared, the amount refunded shall also include all costs paid by the owner of the certificate of purchase or his or her assignor which were posted to the tax judgment, sale, redemption and forfeiture record.

b.  Defendants PIP East, LLC f/k/a PIP West, LLC also d/b/a PIP Group, Don Fullman, Charles Sells and Lena Sells had a policy/practice of titling tax deeds in its name instead of the name of the principal investor in violation of Cal Penal Code Section 532 (theft) and 18 U.S.C. 1342 (frauds and swindles) and consequently, constitutes an unlawful business act or practice *within* the meaning of Business & Professions Code §17200.

c.  Defendants PIP East, LLC f/k/a PIP West, LLC also d/b/a PIP Group, Don Fullman, Charles Sells and Lena Sells had a policy/practice of employing Catherine Trogg to back date assignments of the tax liens Defendants purchased at auction to their investors when possession was demanded by the investors of the same in order to cover up their misdeeds in violation of Cal Penal Code Section 470, S Carolina Code of Laws Section 26 and consequently, constitutes an unlawful business act or practice *within* the meaning of Business & Professions Code §17200.

d.  Defendants PIP East, LLC f/k/a PIP West, LLC also d/b/a PIP Group, Don Fullman, Charles Sells and Lena Sells did not take the proper steps to prevent the tax liens from expiring. Plaintiffs are informed and believe and allege thereon that Defendants had a policy/practice of taking money from investors to foreclose on tax liens with the goal of obtaining a tax deed, but then allowing the tax liens to expire on the principal investor in violation of 18 U.S.C. 18 U.S.C. 1341 and 18 U.S.C. 1343  (mail and wire fraud, respectively) and consequently, constitutes an unlawful business act or practice *within* the meaning of Business & Professions Code §17200. (e.g. Plaintiffs are informed and believe that Defendants did not foreclose on tax lien No 2006-01646, APN 18-07-478-008 after Plaintiff paid and authorized foreclosure on June 9, 2010 so the tax lien expired even though the date to act was extended to November 11, 2010 and the redemption

date was extended to August 4, 2012. As a result, the property was taken by tax deed No. 11-TX-215.)

e. Defendants PIP East, LLC f/k/a PIP West, LLC also d/b/a PIP Group, Don Fullman, Charles Sells and Lena Sells were selling tax liens on the same property before the redemption period expired to multiple principal investors as shown on some of the tax assessor summaries of the ten (10) properties Plaintiff paid Defendants to foreclose upon on June 28, 2010. This policy and practice violated 18 U.S.C. 1341 and 18 U.S.C. 1343 and consequently, constitutes an unlawful business act or practice within the meaning of Business & Professions Code §17200.

95. Plaintiff is informed and believes and alleges thereon that either Defendant has property and money (tax deeds, tax liens and payments) it has taken from the investors wrongfully and withheld from them, specifically as to Plaintiffs those owed as part of the Settlement Agreement; or as a result of Defendants' unlawful, unfair and/or fraudulent business practices, there were no tax liens or tax deeds of value to title back to Plaintiff on March 2, 2017 when Defendants entered into the Settlement Agreement with Plaintiff. By entering into the Settlement Agreement containing such illusory promises was an unlawful, unfair and/or fraudulent business practice.

96. The harm to Plaintiff and to members of the general public outweighs the utility of defendant's policy/practice, and consequently, defendant PIP East, LLC f/k/a PIP West, LLC also d/b/a PIP Group, Don Fullman, Charles Sells, Lena Sells and Does 1 through 50 practices constituting the Ponzi scheme laid out above which resulted in an illusory Settlement Agreement wherein Plaintiffs waived their legal rights through this confidence scheme against real estate investors constitutes an unfair business act or practice within the meaning of Business & Professions Code §17200.

97. Defendant PIP East, LLC f/k/a PIP West, LLC also d/b/a PIP Group, Don Fullman, Charles Sells, Lena Sells, and Does 1 through 50 policy/practice are also likely

to mislead the general public, and consequently, constitutes a fraudulent business act or practice within the meaning of Business & Professions Code §17200.

98.     The unlawful, unfair, and fraudulent business practices as described above, present a continuing threat to members of the investing public warranting an injunction, freezing of assets and accounting, as well as restitution.

99.     As a result of the aforementioned acts, Plaintiff and Class members lost money or property and suffered injury in fact.

100.    Finally, stopping this practice furthers the public interest.  Plaintiff is therefore entitled to reasonable attorney's fees under section 1021.5 of the California Code of Civil Procedure.

Wherefore Plaintiff demands judgment against defendants as set forth below.

### SEVENTH CAUSE OF ACTION
### FAL Violation of §17500
### (Plaintiff Jason Hartman against Defendants PIP East, LLC, Don Fullman, Charles Sells, Lena Sells and Does 1-50)

101.    Plaintiff incorporates in this cause of action the allegations in paragraphs 1 through 100 as though set forth in full herein.

102.    California's Bus & Prof Code §17500 statute provides: "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance

or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine." *Id.*

103.     Beginning at an exact date unknown to Plaintiffs but at least since September 5, 2006, Defendants Defendant PIP East, LLC d/b/a PIP Group and f/k/a PIP West, LLC, Charles Sells, Lena Sells, and Does 1 through 50 have committed acts of untrue and misleading advertising, as defined by Bus & Prof Code §17500, by engaging in the following acts and practices, in that said defendants represented they would immediately title the tax lien investments in the principal investor's name, giving the investor "full control"; that they would "research" and "investigate" the properties and only acquire quality tax liens. They also represented that they were tax lien "experts" making extensive representations in their promotional material and website. The quarterly reports made it appear that the investor's investments were more lucrative than they actually were and that liens were "active" when they were not being protected. (See, Exhibits 1-5).

104.     The representations in the agreement, promotional material, website and quarterly reports were advertisements as that term is defined by Bus & Prof Code §17500.

105.     The acts of untrue and misleading advertising by Defendants described in this complaint present a continuing threat to members of the public in that it gives the false perception to the public that the Defendants are experts that will act as agent for the

24

**COMPLAINT**

*Jason Hartman v PIP East, LLC, et al.*

investor, will research the properties and only acquire quality tax liens for the investor's benefit.

106.    Plaintiff invested in approximately 207 tax liens for the Defendants to manage and lost his investment because the title to the tax liens and/or tax deeds were mismanaged and not titled back over to him pursuant to the terms of the Settlement Agreement entered into on March 2, 2017.

107.    As a result, Plaintiff and those similarly situated are entitled to restitution pursuant to Cal Bus & Prof Code §17535 as necessary "to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful."

108.    As a further result, Plaintiff and those similarly situated are entitled to $2,500.00 for each violation, costs and attorney fees, and injunctive relief as deemed just.

109.    Finally, stopping this practice furthers the public interest.  Plaintiff is therefore entitled to reasonable attorney's fees under section 1021.5 of the California Code of Civil Procedure.

## EIGHTH CAUSE OF ACTION
### (RICO)
**(Plaintiff Jason Hartman against Defendant PIP East, LLC, Don Fullman, Charles Sells, Lena Sells and Does 1-50)**

110.    Plaintiffs incorporate in this cause of action all of the allegations in paragraphs 1 through 109 as though set forth in full herein.

## CONSPIRACY

111.    Defendants PIP East, LLC, Don Fullman, Charles Sells, Lena Sells and Does 1-50 have not undertaken the practices and activities described in this complaint in isolation.

112.    Defendants have done so as part of a common scheme and conspiracy, which includes not only the Defendants, but other real estate professionals and persons hired to attend the auctions to bid on the tax liens, as well.

113.   All of the practices described herein are the competent part of Defendants' larger scheme designed to maximize Defendants' profits, both from the management agreement itself and from the investor stacking due to the unique nature of tax lien investments.

114.   Each Defendant and all members of the conspiracy, with knowledge and intent agreed to the overall objective of the conspiracy, agreed to commit acts of fraud to wrongfully obtain property and/or money from Plaintiffs and others similarly situated, and actually committed such acts.

115.   Indeed, for the fraudulent scheme described above to be successful, each Defendant and other members of the conspiracy had to agree to enact and utilize the same devices and fraudulent tactics against Plaintiffs and those similarly situated.

116.   Numerous common facts and similar activities, which reflect the above reality and imply the existence of a conspiracy, exist among all of the Defendants and other members of the conspiracy, including: (a) tax liens being purchased and sold to other investors during the redemption period of an existing tax lien held by another principal investor on the same property; (b) taking funds from the investors for foreclosures while the tax lien is not perfected into a tax deed but instead expires or is redeemed; (c) taking a tax deed in the name of the Defendant instead of the investor and then flipping the property and keeping the proceeds; (d) failing to account for all tax liens or redemption to the investor; (e) purchasing tax liens on properties where a history sales in error had been recorded (lack of due diligence or research in acquiring quality investments and/or failing to file the proper paperwork in order to obtain a refund on the tax paid in error for the investor); (f) disappearing and not communicating with investors during the time to foreclose on the property in order to convert the tax lien into a tax deed; (g) Plaintiff is informed and believes and alleges thereon that Defendant was hiring people to attend the tax lien auctions to coordinate bidding where the same properties are bid on over and over again and then assigned to different

**COMMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

investors; (h) backdating assignments; and (h) creating purposefully confusing investor reports and programs for the tax liens.

117.   The acts and events were concealed by Defendant's deceit and fraud where with Plaintiff's due diligence could not bring these claims until now, the conspiracy was conducted through, and implemented by, Defendants and other real estate professionals authorized to maintain and resell the tax liens and tax deeds.

## RICO ALLEGATIONS
### The PIP Enterprise

118.   Plaintiffs, incorporates in this cause of action all of the allegations in paragraphs 1 through 117 as though set forth in full herein.

119.   Defendants are all "persons" within the meaning of 18 U.S.C. §1961(3).

120.   Based upon Plaintiffs' current knowledge, the following persons constitute a group of individuals associated in fact that will be referred to herein as the "PIP Enterprise:" (1) PIP East, LLC d/b/a the PIP Group f/k/a PIP West, LLC until it merged on January 1, 2016,  (2) Charles and Lena Sells, (3) Don Fullman and (4) Does 1 through 50.

121.   The PIP Enterprise is an ongoing organization that engages in, and whose activities affect, interstate commerce by soliciting others to invest in tax liens on real property throughout the United States. PIP West, LLC and PIP East, LLC were never registered to do business in California although they operated out of Orange County, California.

122.   While all Defendants participate in and are members and part of the PIP Enterprise, they also have an existence separate and distinct from the enterprise.

123.   To successfully steer as many investors as possible into the PIP tax lien investment program, Defendants need a system that allows them to effectively sell an interest in the same property to many investors because there is only a finite number of tax liens without the investor knowing.

124.   The PIP Enterprise provides defendants with that system and ability, and their control of and participation in it is necessary for the successful operation of their scheme.

125.   Furthermore, the participation by the people who would control the bidding at the tax lien auctions and whether a tax lien would expire while others managed the reporting to the investors on redemption allowed the enterprise to function more effectively.

126.   The Defendants control and operate the PIP Enterprise by hiring a group of people to attend the auctions, another group to keep track of redemption and another to foreclose or keep track of which properties needed to expire.

127.   This created a pattern of "investor stacking" where the same tax liens were purchased every year at auction on the same property instead of creating a program where the tax investor paid the property taxes during the redemption period. So, the new tax could be sold to a different investor increasing Defendant PIP Group's management fees on the same property (although the redemption period had not expired for the prior investor). Plaintiffs are informed and believe after the investors were stacked, PIP would allow the tax lien to expire.  There is evidence that when a tax lien was not stacked, PIP would foreclose and obtain the tax deed in PIP's name instead of the investor; yet continue to charge the investor. The investors received some quarterly reports stating liens were "active" and some tax liens leaving the investor with the impression they held an interest which was being managed by PIP for their benefit. PIP confused matters further by their communications and half-hearted explanations of the tax lien process which were couched in a way to confuse the investor.

128.   The PIP Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engage.

### PREDICATE ACTS

28
**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

129.   Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (relating to mail fraud) and 18 U.S.C. § 1343 (relating to wire fraud).  As set forth herein, Defendants have engaged, and continue to engage in conduct violating each of these laws to effectuate their scheme.

130.   Additionally, in order to make their scheme effective, each of the Defendants sought to and did aid and abet others in violating the above laws within the meaning of 18 U.S.C. §2.  As a result, their conduct is indictable under 18 U.S.C. §1341 and 18 U.S.C. §1343, on this additional basis.

**VIOLATIONS OF 18 U.S.C. §1341 and 18 U.S.C. §1343**

131.   "There are two elements in mail fraud: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts), and (2) use of the mail for the purpose of executing, or attempting to execute, the scheme (or specified fraudulent acts)." *Schmuck v. United States*, 489 U.S. 705, 721 n. 10 (1989); *see also Pereira v. United States*, 347 U.S. 1, 8 (1954) ("The elements of the offense of mail fraud under . . . § 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc., for the purpose of executing the scheme."); Laura A. Eilers & Harvey B. Silikovitz, *Mail and Wire Fraud*, 31 Am. Crim. L. Rev. 703, 704 (1994) (cases cited).

132.   For the purposes of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false promises, representations or promises, the Defendants, in violation of 18 U.S.C. § 1341, placed in post offices and/or in authorized repositories matter and findings to be sent or delivered by the Postal Service, caused matter and things to be delivered by commercial interstate carriers, and received matter and things from the Postal Service or commercial interstate carriers, including but not limited to authorizations to foreclose, promotional items, invoices, letters, and quarterly reports.

133.   For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses,

**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

representations or promises, the Defendants, in violation of 18 U.S.C. § 1343, transmitted and received by wire, matter and things, including but not limited to promotional materials, applications, authorizations to foreclose, agreements, manuals and correspondence, and made or caused to be made false statements over the telephone, electronic mail, and internet.

134.   The matter and things sent by Defendant, through their authorized agent, via the Postal Service, commercial carrier, wire or other interstate electronic media included, inter alia, authorizations to foreclose, promotional items, invoices, letters, and quarterly reports. Defendants also sent Plaintiff's representative approximately sixty-seven (67) tax liens it backdated on or about April 13, 2017 overnight delivery.

135.   Other matter and things sent through or received via the Postal Service, commercial carrier, wire, or other interstate electronic media by Defendants included information or communication in furtherance of or necessary to effectuate the scheme including the request for money which was sent by the investors to the Defendants.

136.   Defendants' misrepresentations, acts of concealment and failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and obtaining their money and/or property for Defendants' gain.

137.   Defendants either knew or recklessly disregarded the fact that the misrepresentation and omission described above were material, and Plaintiffs relied upon the misrepresentations and omissions as set forth above.

138.   As a result, Defendants have obtained money and property belonging to the Plaintiffs, and Plaintiffs have been injured in their business or property by the Defendants' overt acts of mail and wire fraud, and by their aiding and abetting each other's acts of mail and wire fraud.

## PATTERN OF RACKETEERING ACTIVITY

139.   The Defendants have engaged in a "pattern of racketeering activity," as defined by U.S.C. §1961(5), by committing or aiding and abetting in the commission of at least two acts of racketeering activity, i.e., indictable violations of 18 U.S.C. §§ 1341 and 1343 as described above, discovered within the past four years after being concealed by misrepresentations over the status of the tax lien investments from Defendants which prevented the Plaintiff's discovery of the claim within the limitations period and due diligence in pursuing discovery of the claim..

140.   In fact, each of the Defendants have committed or aided and abetted in the commission of multiple acts of racketeering activity.  Each act of racketeering activity was related, had a similar purpose, involved the same or similar participants and method of commission, had similar results and impacted similar victims, including Plaintiffs.

141.   The multiple acts of racketeering activity that Defendants committed and/or conspired to commit, or aided and abetted in the commission of, were related to each other, and amount to and pose a threat of continued racketeering activity, and therefore constitute a "pattern of racketeering activity" as defined in 18 U.S.C. §1961(5).

## RICO VIOLATIONS

142.   Section 1962(c) of RICO provides that it "shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…"

143.   Through the patterns of racketeering activities outlined above, the Defendants have also conducted and participated in the affairs of the PIP Enterprise.

144.   Section 1962(d) of RICO makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b) or (c), of this section.

145.   Defendants' conspiracy to secure property and/or money from Plaintiffs and other investors for their own use through the fraudulent scheme described above violates 18 U.S.C. §1962(d).

146.   Each of the Defendants agreed to participate, directly or indirectly, in the conduct of the affairs of the PIP Enterprise through a pattern of racketeering activity comprised of numerous acts of mail fraud and wire fraud, and each Defendant so participated in violation of 18 U.S.C. §1962(c).

147.   Defendants used a scheme to defraud by means of false pretenses as particularly described in the fraud and 17200 causes of action above.

148.   Defendant's actions entitle Plaintiff to actual damages, treble damages, attorney's fees and costs.

## COUNT 1
## VIOLATION OF RICO 18 U.S.C. §1962(c)

149.   Plaintiffs, incorporates in this cause of action all of the allegations in paragraphs 1 through 148 as though set forth in full herein.

150.   As set forth above, Defendants have violated 18 U.S.C. §1962(c) by conducting or participating directly or indirectly in the conduct of the affairs of the PIP Enterprise through a pattern of racketeering.

151.   As a direct and proximate result, Plaintiffs have been injured in their business or property by the predicate acts which make up the Defendants' patterns of racketeering activity. Plaintiff had purchased approximately 207 tax lien investments from Defendants.

152.   The foreclosure authorization agreements, checks, quarterly reports, letters, invoices and website informational/promotional materials were emailed, mailed through the US Mail, placed on PIP's website or faxed to the investor.  The matter contained untrue statements about the type, quality or status of the investments and their value.

153.   Defendant's actions entitle Plaintiffs to actual damages, treble damages, attorney's fees and costs under 18 U.S.C. 1964.

**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT II

## VIOLATION OF RICO 18 U.S.C. §1962(D)

## CONSPIRING TO VIOLATE 17 U.S.C. §1962 (C)

154.   Plaintiffs, incorporates in this cause of action all of the allegations in paragraphs 1 through 153 as though set forth in full herein.

155.   Plaintiff brings this claim on her own behalf and on behalf of each member of the Class described above.

156.   As set forth above, in violation of 18 U.S.C. §1962(d), Defendants have, as set forth above, conspired to violate 18 U.S.C. §1962(c) by conducting, or participating directly or indirectly in the conduct of, the affairs of the PIP Enterprise through a pattern of racketeering.

157.   As a direct and proximate result, Plaintiffs and Class members have been injured in their business or property by the predicate acts which make up the Defendants' patterns of racketeering activity.

158.   The agreements, authorizations to foreclose, checks, promotional matter, quarterly reports, tax liens and letter were emailed, mailed through the US Mail or faxed to the Plaintiff tax lien investor.  These materials contained untrue statements about PIP Group's management as agent, the quality of the tax lien investment and their value.

159.   Defendant's actions entitle Plaintiffs to actual damages, treble damages, attorney's fees and costs under 18 U.S.C. 1964.

## EXEMPLARY DAMAGES

160.   Don Fullman, Lena Sells, Charles Sells, and Does 1 through 50 conduct is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

161.   Don Fullman, Lena Sells and Charles Sells had been intentionally stacking investors on the same properties during the redemption periods and then allowing the

nonperforming tax liens to expire as way of doing business while they pulled incoming revenue out of the business accounts and used it to support their lavish lifestyle.

162.   Don Fullman, Lena Sells and Charles Sells, and Does 1 through 50 intentionally misrepresented or concealed a material fact as specifically alleged throughout this complaint.

163.   An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision making such that his or her decisions ultimately determine corporate policy.  Lena Sells and Charles Sells, and Does 1 through 50 were managing agents of PIP East, LLC.

164.   The malice, oppression, or fraud was conduct of one or more officers, directors, or managing agents of PIP East, LLC, who acted on behalf of PIP East, LLC, Charles Sells and Lena Sells were aware of the laws in Illinois and that a flag of sale in error meant that the property was not one in which the county could collect tax on if challenged, yet Defendants purchased and sold tax liens on these properties instead of doing the research promised in the contract as part of their management fee.

165.   Alternatively, the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of PIP East, LLC.

166.   Alternatively, one or more officers, directors, or managing agents of PIP East, LLC knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred. They adopted each and every act, including sending the updates and emails to Plaintiff that were not true of the company's financial position.

167.   The aforementioned conduct of PIP East, LLC was malicious and/or an intentional misrepresentation, deceit, or concealment of a material fact known to PIP East, LLC with the intention on the part of the PIP East, LLC, Charles Sells, and Lena Sells of thereby depriving Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiff to a cruel and unjust hardship

**COMPLAINT**
*Jason Hartman v PIP East, LLC, et al.*

in conscious disregard of Plaintiff's rights, so as to justify an award of exemplary and punitive damages.

<strong>PRAYER FOR RELIEF</strong>

**WHEREFORE, Plaintiffs pray for judgment** against Defendants, and each of them, as follows:

**First Cause of Action for Breach of Contract**

1. For Specific performance and consequential damages;
2. Interest;
3. Costs;
4. Attorney fees;
5. Any further relief the court would deem appropriate and just.

**Second and Third Causes of Action for Fraud, False Promise & Deceit**

1. For specific performance and actual damages;
2. General damages;
3. Costs;
4. Attorney fees;
5. Punitive damages;
6. Any further relief the court would deem appropriate and just.

**Fourth Cause of Action for Conversion**

1. For actual damages;
2. For general damages;
3. Costs;
4. Punitive Damages; and
5. Any further relief the court would deem appropriate and just.

**Fifth Cause of Action for Breach of Fiduciary Duty**

1. For actual damages;
2. For general damages;

<strong>COMPLAINT</strong><br>
<em>Jason Hartman v PIP East, LLC, et al.</em>

3. Restitution relief;

4. Prejudgment Interest;

5. Costs;

6. Punitive Damages; and

7. Any further relief the court would deem appropriate and just.

**Sixth Cause of Action for Violation of 17200**

1. For Defendants' assets to be frozen, a preliminary and permanent injunction;

2. Restitution;

3. Attorney fees under 1021.5

4. Any further relief the court would deem appropriate and just.

**Seventh Cause of Action for Violation of 17500**

1. For a preliminary and permanent injunction;

2. Restitution;

3. Attorney fees under 1021.5

4. Any further relief the court would deem appropriate and just.

**Eighth Cause of Action for RICO**

1. For actual damages;

2. Costs;

3. Attorney Fees;

4. Treble Damages;

5. Any further relief the court would deem appropriate and just.

1

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as to those issues that are not equitable in nature.

Dated: February 20, 2018          Respectfully Submitted,
                                  LAW OFFICES OF LENORE ALBERT
                                  /s/ Lenore Albert_____
                                  LENORE L. ALBERT, ESQ.
                                  Attorney for Plaintiff, Jason Hartman